Argued November 11, decided November 20, 1913.

# SULLIVAN *v.* KING.

### (136 Pac. 335.)

**Joint Adventures—Settlement Between Partners—Findings—Evidence.**
  Evidence *held* to require a finding that decedent and defendant had settled their joint adventure in the purchase of certain real property, and that in such settlement it was agreed that defendant should retain the property in controversy.

From Linn: WILLIAM GALLOWAY, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is a suit by the widow of Cornelius Sullivan in her individual capacity, in her representative capacity as administratrix of her husband's estate, and as guardian of her minor son, Cornelius H. Sullivan, whom she joined as plaintiff, against Griff King, to compel a conveyance from the defendant to her son and herself of certain real property which she says was purchased by her husband during his lifetime,

taking the title in the name of the defendant. She also prays that the defendant be required to account for and pay to her the rents and profits of the lands accruing since her husband's death.

Traversing all the allegations of the complaint except as otherwise stated, the defendant says of four tracts mentioned in the complaint that he and the decedent were partners in the ownership of those lands, and that on April 15, 1906, the two partners had an accounting and settlement of the affairs of the partnership, the result of which was that it was agreed that defendant should retain as entirely his own the title of all the property, the same being then in his name. This in turn was traversed by the reply. From a decree in some measure in favor of plaintiff, the defendant appeals.                    REVERSED.

For appellant there was a brief over the names of *Messrs. Hewitt & Sox* and *Mr. L. L. Swan,* with an oral argument by *Mr. Henry H. Hewitt.*

For respondents there was a brief over the names of *Messrs. Weatherford & Weatherford* and *Mr. Lauflin M. Curl,* with an oral argument by *Mr. James K. Weatherford.*

MR. JUSTICE BURNETT delivered the opinion of the court.

At the trial the plaintiff, Maggie S. Sullivan, testified to some statements made to her by her husband while he lived, in the absence of defendant. It was urged in the argument that the administratrix was not a proper party to this suit, and that the complaint did not state facts sufficient to constitute a cause of suit in her favor against the defendant, and hence that she did not come within the proviso attached to Sec-

tion 732, L. O. L., which reads thus: "Provided, that when a party to an action, suit, or proceeding by or against an executor or administrator appears as a witness in his own behalf, or offers evidence of statements made by deceased against the interest of the deceased, statements of the deceased concerning the same subject matter in his own favor may also be proven." We do not deem it necessary to decide this question, in view of the testimony given at the trial and reported in the record.

It was shown that the decedent was in the habit of investing in real estate and taking title in the name of other persons, the reason assigned being that he was superintendent of a railroad, and he thought objection might be made by the officers of the company if he speculated in realty along the line of the road. As to the propriety of admitting testimony of such transactions between the decedent and parties other than the defendant we make no intimation. The defendant admits that in some cases he took title for the decedent, investing no money of his own. He avows this, but says that in other instances they invested equal amounts of money, and were, in fact, partners in property of the latter class, although the title stood in the name of the defendant. The plaintiff, administratrix, testified at the trial, and when asked what her husband said as to the ownership of the property, she answered: "He said that he had Griff King work for him; that he could do things that he could not get anybody else to do, and in some instances he would give him a half interest." Again, she says: "We were talking of moving out of the house we were living in. My husband wanted to move to the Ellsworth street house, and I told him that I would not move there as long as Griff King had an interest in it." She was also asked this question: "You may

state what, if anything, Mr. Sullivan said to you in reference to Mr. King having some of his property in his name." She answered: "Mr. Sullivan said that he was going to quit the railroad business very soon before his death. We talked of it on Decoration Day; that he would take all of his property out of Griff King's name." It is conceded, then, concerning the only tracts involved in the testimony, that at one time the decedent had an interest in the property, the title of the whole of which was in the name of the defendant. The testimony shows by a great preponderance that each owned an undivided half of the property. The defendant testified to the same. The transactions at the time of taking the title showed that each paid one-half of the money, and the statement of the administratrix about what her husband said concerning the defendant sometimes owning a half interest confirms this theory.

The case turns upon the alleged settlement of the partnership affairs concerning these tracts. The defendant testified that he had loaned the decedent three items of cash, as follows: December 15, 1901, $300, April 10, 1902, $800 and October 21, 1905, $200. He is corroborated by two witnesses as to the $800 item. The witness Horton was visiting at the store of the defendant at Kingston when the decedent came in and asked for the loan of money. The defendant, according to this witness, produced quite a sum in bank notes and currency and delivered it to the decedent. The witness said to them that he would not part with so much money without taking security, but the decedent said it was all right; that he and the defendant were partners. In a day or two thereafter, they purchased one of the tracts involved, and in the presence of disinterested witnesses the decedent paid $800 in currency as his part of the purchase price, and the

defendant paid his share separately. The item of $200 is verified by the defendant's check, drawn in favor of and indorsed by the decedent. These constituted the charges against the decedent, and in the settlement he is credited with his half of the tracts involved, and one half of two notes held by the concern, amounting in all to $1,300, balancing the cash items alluded to. That such a settlement was had is corroborated by the testimony of a clerk in a drugstore where the settlement took place. He deposes that the defendant and the decedent came into his store and said that they had some business together, and went to themselves and were engaged some time in consultation. There is no testimony to contradict the defendant about this settlement. In fact the plaintiff relates a conversation had with her husband two days before his death, thus: "Mr. Sullivan told me that he was about to rent the building that we were living in on the corner of Second and Lyon to Pete Anderson—that is, if the town went wet he was going to take it for a saloon—and he wanted to know if I had made up my mind which house I would move to. I said, 'No, not unless you had that settlement that you was going to have with Griff King about two or three weeks ago when he was at our house,' and he says, 'we fixed it,' and I wouldn't agree to move into either of those houses there until it was all settled." This supports the defendant on the point that the business was settled and settled as he says, for unless that were so, some conveyance from the defendant for the property involved would probably have been taken, either to the decedent or to someone for him. Nothing of the kind appears in the record, however, respecting the four tracts involved. The clear weight of the testimony on the disputed question of fact is with the defendant. It is to be regretted that men

make such scant memorials of their transactions when it is possible to do business in a way that would leave no room for dispute; but, in the absence of such evidence, we must determine the matter according to the weight of such testimony as we have. The result is that the issue must be decided in favor of the defendant on the testimony adduced. The decree of the Circuit Court is reversed and one entered here according to the prayer of the defendant's answer.

REVERSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.